UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEX JACKSON,

                Petitioner,

    v.

BEN CURRY, Warden,

              Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

**No. 08-0923 MMC**

---

## PETITIONER'S TRAVERSE

---

MICHAEL J.GUNNING
State Bar # 194881
2351 Sunset Street
Suite 170  PMB # 511
Rocklin, CA  95765
Telephone: (916) 543-6120

Counsel for Petitioner
ALEX JACKSON

# TABLE OF CONTENTS

Page No.

Preliminary Matters                                                      1

Petitioner's Most Compelling Constitutional Claim                        2

Argument                                                                 4

   1. Due Process Due                                     4


   2. Mr. Jackson has a Federally Protected Liberty
     Interest in Parole                          5

   3. Mr. Jackson's Claims are Sufficiently Supported
     By Supreme Court Authority                  5

   4. The Controlling State Court Decision Is An
     Unreasonable Application Of Federal Authority,
     Facts And Law, And Is Therefore Entitled To No
     Federal Habeas Deference                    7

   5. Some Of The Immutable Facts Of The Commitment
     Offense Were The Only Arguably Viable Findings
     Supporting The Panel's Unreasonable Parole Risk Decision    8

   6. The Evidence Does Not Support Most Of The Panel's
     Findings Regarding Mr. Jackson's Commitment
     Offense And Prior Record As They Relate To His
     Public Safety Risk                          9

   7. The Panel's Decision Violated Due Process Because
     It Set Forth No Evidence Demonstrating That Mr.
     Jackson's Parole Currently Posed An Unreasonable
     Risk Of Danger To Public Safety, The State's Sole
     Parole Determinant And The Codified Standard Below
     Which Parole Is Required, Nor Any Evidence Suggesting
     That The Immutable 24-To-30 Year-Old Immutable Facts
     Recited Still Rendered Mr. Jackson A Current Unreasonable
     Public Safety Threat;  No Such Evidence Exists    11

# TABLE OF CONTENTS
(Continued)

8. The Interminable Denial Of Mr. Jackson's Parole Based
On Arguably Applicable, Immutable Factors Of His
Commitment Offense And Prior Record Violates Due
Process By Amending His Prison Term To Life Without
Any Possibility Of Parole                                          16

Conclusion                                                         17

Remedy                                                             18

# **TABLE OF AUTHORITIES**

## **Cases**

*Biggs v. Terhune,* 334 F.3d 910 (9th Cir. 2003) .................................................................................. 7

*Bland v. California Department of Corrections* (9th Cir. 1999) 20 F.3d 1469 ........................... 16, 17

*Blankenship v. Kane,* 2007 WL 1113798 (N.D. Cal 2007) ................................................................. 14

*Board of Pardons v. Allen* (1987) 482 U.S. 369 ............................................................................... 5

*Brown v. Kane,* 2007 WL 1288448 (N.D. Cal 2007) ....................................................................... 14

*Dubria v. Smith* (9th Cir. 1999) 197 F3d. 390 ........................................................................... 16, 17

*Fowler v. Butler,* 2007 WL 1555726 (E.D.Cal. 2007) ..................................................................... 14

*Greenholtz v. Inmates of Nebraska Penal & Correctional* (1979) 442 U.S. 1 ............................... 5, 6

*Hayward v. Marshall* (9th Cir. 2008) 512 F.3d 536 .................................................................. 2, 3, 13

*Himes v. Thompson* (9th Cir. 2003) 336 F.3d 848 ............................................................................. 8

*In re Burdan* (2008) __ Cal.App.4th __, 2008 WL 757033 ...................................................... 3, 4, 13

*In re Dannenberg,* 34 Cal.4th 1061 (2005) ........................................................................... 3, 12, 13

*In re Dannenberg* (2007) 68 Cal.Rptr.3d 188 (Rev. Grntd., February 13, 2008, No. S158880)...................... 2

*In re DeLuna* (2005) 126 Cal.App.4th 585 ...................................................................................... 10

*In re Duarte,* 143 Cal.App.3d 943 (1983) ....................................................................................... 12

*In re Elkins,* 144 Cal.App.4th 475 (2006) ................................................................................... 3, 15

*In re Lee,* 143 Cal.App.4th 1400 (2006) .................................................................................. 3, 4, 13

*In re Minnis* (1972) 7 Cal. 3d 639 ................................................................................................... 10

*In re Roderick,* 154 Cal.App.4th 242 (2007) ................................................................................... 10

*In re Rodriguez* (1975) 14 Cal.3d 639 ............................................................................................ 10

*In re Rosenkrantz,* 29 Cal.4th 616 (2002) ..................................................................................... 5, 6

*In re Scott,* 133 Cal.App. 4th 573 (2004) ................................................................................... 3, 14

*In re Singler* (2008) __ Cal.App.4th __, 2008 WL 788471 ......................................................... 3, 4, 13

*In re Smith* (2003) 109 Cal.App.4th 489 ........................................................................................ 10

*In re Smith,* 114 Cal.App.4th 343 (2003) ......................................................................................... 9

*Irons v. Carey,* 479 F.3d 658 (9th Cir. 2007) .................................................................................... 7

# TABLE OF AUTHORITIES

## (continued)

### Cases

*Martin v. Marshall,* 431 F.Supp.2d 1038 (N.D. Cal. 2006) ............................................................. 13

*McQuillion v. Duncan,* 306 F.3d 895 (9th Cir. 2002) ...................................................... 6, 7

*Nikooseresht v. Curry,* 2007 WL 2088558 (N.D.Cal. 2007) ............................................................. 13

*Rosenkrantz v. Marshall,* 444 F.Supp.2d 1063 (C.D. Cal. 2006) ..................................................... 14

*Sass v. Cal. Board Of Prison Terms* (9th Cir. 2006) 461 F.3d 1123 ........................................... 5, 6, 7

*Superintendent v. Hill* (1985) 472 U.S. 445 ........................................................................ 7

*Thomas v. Brown,* 2006 WL 3783555 (N.D. Cal. 2006) .................................................................. 14

*Van Tran v. Lindsey* (9th Cir. 2000) 212 F.3d 1143 ............................................................. 6

*Willis v. Kane,* 485 F.Supp.2d 1126 (N.D. Cal. 2007) ......................................................... 13

### Statutes

Pen.C. § 3041 ....................................................................................................2-5, 7, 11, 12, 13, 15

### Regulations

15 CCR § 2401 ............................................................................................ 2, 4, 5, 7, 12, 15

15 CCR § 2402 ............................................................................................ 2, 4, 5, 7, 12, 15

MICHAEL J. GUNNING
State Bar # 194881
2351 Sunset Street
Suite 170  PMB # 511
Rocklin, CA  95765
Telephone: (916) 543-6120

Counsel for Petitioner
ALEX JACKSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEX JACKSON,<br>                    Petitioner,<br><br>     v.<br><br>BEN CURRY, Warden,<br><br>                    Respondent. | **No. 08-0923 MMC**<br><br>**PETITIONER'S TRAVERSE** |

To THE HONORABLE M. CHESNEY, United States District Judge:

Counsel for Petitioner Alex Jackson respectfully lodges this Traverse in response to the Answer filed by Respondent Board of Parole Hearings (BPH, Board) on March 28, 2008.

## PRELIMINARY MATTERS

Petitioner ADMITS Respondent's allegations in the Answer stating the offense of which he was convicted, the place of his confinement, the name of his custodian, and the dates and results of his parole determinations by BPH; Petitioner DENIES all other facts, claims, grounds, and argument set forth in the Answer.

Respondent stipulates in the Answer (p. 6) that Petitioner has met procedural habeas corpus requirements (custody, timeliness, exhaustion of state court remedies, jurisdiction, venue).

## PETITIONER'S MOST COMPELLING CONSTITUTIONAL CLAIM

Because neither the BPH hearing panel, the state courts, nor the Answer set forth a scintilla of evidence suggesting that *Mr. Jackson's parole currently poses an "unreasonable risk of danger" to public safety* – the State's codified standard below which parole "*shall*" be granted, the sole parole determinant set forth in the statute that provides Mr. Jackson's protected liberty interest in parole (Pen.C. § 3041, defined in 15 CCR §§ 2401, 2402(a)), the panel's decision flunks the some evidence test and must be vacated.

Mr. Jackson has long admitted his responsibility for his murder offense and does not dispute the existence in the record of at least some of the immutable facts of the offense and prior record set forth by the panel as findings for denying parole (as again explained below, the offense facts and Petitioner's prior record were the only *arguably* tenable ground for finding that Mr. Jackson's parole would pose an undue risk to public safety). But *finding evidence in the record of immutable offense facts recited by a BPH panel does not satisfy the some evidence standard of review*, as recently emphasized by the Ninth Circuit and the State's Courts of Appeal. In *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), the Ninth Circuit recently explained:

> Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made clear that the "*findings that are necessary to deem a prisoner unsuitable for parole*," *Irons,* 505 F.3d at 850, *are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety*. In re Dannenberg, 156

Cal.App.4th at 1400, 68 Cal.Rptr.3d at 198 (Cal.Ct.App. Nov. 16, 2007), *modified,* 2007 WL 4227229, __ Cal.Ct.App. __, __ Cal.Rptr3d __ (Cal.Ct.App. Dec. 3, 2007); *In re Lee,* 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (Cal.Ct.App.2006); *In re Scott,* 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 (Cal.Ct.App.2005); *see* Cal.Penal Code § 3041(b) (providing that the Board "shall set a release date unless ... consideration of the public safety requires a more lengthy period of incarceration for this individual"). For our purposes, then, "[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety.

"*Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety*." *Lee,* 143 Cal.App.4th at 1408, 49 Cal.Rptr.3d 931 (citations and footnote omitted); *see also In re Elkins,* 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d 503(Cal.Ct.App.2006) (holding that the "governor, in reviewing a suitability determination, must remain focused ... on facts indicating that release currently poses 'an unreasonable risk of danger to society' " (citing Cal.Code Regs. tit. 15, § 2402(a))); *Scott,* 133 Cal.App.4th at 591, 34 Cal.Rptr.3d 905("The factor statutorily required to be considered, and the overarching consideration, is 'public safety.' " (citing Cal.Penal Code § 3041(b))).

*Hayward v. Marshall, supra,* 512 F.3d at 543 (emphasis added).

The State's courts have emphasized this determinant:

. . . the determination of the suitability for parole involves a paramount assessment of the ***public safety risk*** posed by the particular offender. (*In re Dannenberg*, 34 Cal.4th 1061, 1084 (2005); see *In re Singler* (2008) __ Cal.App.4th __, 2008 WL 788471 at * 9; *In re Burdan* (2008) __ Cal.App.4th __, 2008 WL 757033 at *3 [emphasis added].)

***Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release***

***unreasonably endangers public safety***." (*In re Lee*, 143 Cal.App. 4th 1400, 1409 (2006); *In re Singler, supra*, 2008 WL 788471 at *9; *In re Burdan, supra*, 2008 WL 757033 at *11 [emphasis added].)

***The relevant test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety***." (*In re Lee, supra*, 143 Cal.App.4th at 1408; see *In re Singler, supra*, 2008 WL 788471 at *9; *In re Burdan, supra*, 2008 WL 757033 at *8 [emphasis added].)

Because neither the BPH panel, the state courts, nor the Answer suggests an iota of evidence – including the immutable facts of Mr. Jackson's commitment offense and prior record – that demonstrates that his parole *currently* poses an unreasonable risk of danger of public safety (*all* who murder pose such risks *at the time of the murder*), Mr. Jackson's liberty interest in the parole date mandated by the statute in such a circumstance, and the Due Process Clause that protects that liberty interest requires the panel's decision mouthing the boilerplate "unreasonable risk of danger" verbiage to be set aside. Pen.C. § 3041; 15 CCR §§ 2401, 2402(a).

## ARGUMENT

1. ***Due process due***. Respondent's notion that the only due process required to be afforded Mr. Jackson was a hearing and a written decision (Answer, p. 7) is absurd. Aside from his additional rights secured by the State's parole statutes and regulations, protected by the Due Process Clause of the Fourteenth Amendment, e.g., the right to counsel, to an impartial panel, and to present evidence, the Supreme Court, Ninth Circuit, and California authorities cited in the Petition emphatically required the decision to be based on findings

supported by at least some reliable evidence[1] *demonstrating that Mr. Jackson's parole currently posed an "unreasonable risk of danger" to public safety*, the State's codified parole suitability standard below which parole "shall" be granted.  Cal. Penal Code (Pen.C.) § 3041(a); 15 CCR §§ 2401, 2402(a).

### 2. *Mr. Jackson has a federally protected liberty interest in parole*.

Respondent's notion that Petitioner does *not* have a liberty interest in parole under *Greenholtz* protected by due process is contrary to Supreme Court, Ninth Circuit, and California Supreme Court authority.  *Board of Pardons v. Allen*, 482 U.S. 369, at pp. 379-381 (1987); *Sass v. Cal. Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) ("*Sass*"); *In re Rosenkrantz* 29 Cal.4th 616 (2002) ("*Rosenkrantz*"). Although Mr. Jackson may not have a liberty interest in a particular release date, it is beyond argument that his due process liberty interest in parole required a parole date to be set by the 2006 BPH panel because he had served in excess of his minimum prison term and had been forensically determined not to pose an unreasonable public safety risk if paroled.  Pen.C. § 3041; 15 CCR §§ 2401, 2402(a); see exhibit B, pp. 4-17.

### 3. *Mr. Jackson's claims are sufficiently supported by Supreme Court authority*.  The Ninth Circuit has squarely rejected Respondent's notion that the lack of a Supreme Court decision addressing the explicit facts underlying habeas claims bars federal habeas relief:

---

[1] In this brief Petitioner assumes, *ad arguendo*, that despite Respondent's nonsensical argument to the contrary (Answer, p. 8), the some evidence standard of review will be applied by the Court.

> We have made clear that "the Supreme Court need not have addressed the identical factual circumstance at issue in a case in order for it to have created 'clearly established' law governing that case." *Van Tran v. Lindsey,* 212 F.3d 1143, 1154 (9th Cir. 2000). Rather, it is enough that the Supreme Court has prescribed a rule that plainly governs the petitioner's claim. In this case, the Court has done just that. We therefore hold that "clearly established Federal law, as determined by the Supreme Court of the United States" provides that California prisoners like McQuillion have a cognizable liberty interest in release on parole.

*McQuillion v. Duncan,* 306 F.3d 895, 901 (9th Cir. 2002) ("*McQuillion*").

Ample Supreme Court law supports Mr. Jackson's claims. In *Greenholtz v. Inmates of Nebraska,* 442 U.S. 1 (1979) ("*Greenholtz*"), the Supreme Court held that a state prisoner may be constitutionally entitled to *more* than "an opportunity to be heard and be advised of the reasons he was not found suitable." The Court explained that state statutes and regulations can impart to state prisoners liberty interests protected by due process, particularly when such provisions are couched in mandatory ("shall") terms and impose predicates. The Supreme Court re-affirmed *Greenholtz* in *Board of Pardons v. Allen, supra,* 482 U.S. at 379-381. In both cases, as in California, the States' parole statutes required that parole "shall" be granted if a certain predicate – here, less than an unreasonable risk to public safety – was established.

Based on *Greenholtz,* the Ninth Circuit, like the California Supreme Court in *Rosenkrantz,* 29 Cal.4th at 661, determined that the mandate and predicates set forth in California's parole determination statute, Pen.C. § 3041(a), that parole "shall" be granted "unless" the prospective parolee currently poses an undue public safety risk, creates a federally protected liberty interest in parole. *McQuillion,* 306 F.3d at 901-903; see *Sass,* 461 F.3d 1123.

The Ninth Circuit further holds, again based on Supreme Court

Authority, *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), in accord with the

California Supreme Court's holding in *Rosenkrantz*, that federal due process

requires the Board's findings that support its parole decisions to be supported

by at least "some evidence" having "some indicia of reliability."  *McQuillion*,

396 F.3d at 904; see *Sass*, 461 F.3d at 1128-1129; *Irons v. Carey*, 479 F.3d

658, 662 (9th Cir. 2007); *Biggs v. Terhune*, 334 F.3d 920, 915 (9th Cir. 2003).


    4. ***The controlling state court decision is an unreasonable application
of federal authority, facts and law, and is therefore entitled to no federal
habeas deference***.

       As explained (Petition, pp. 7-8), the "controlling" decision of the state

superior court (exhibit I) failed to address Mr. Jackson's claims.  The court

held that the mere presence in the record of some of the facts of the offense and

Petitioner's prior record recited by the BPH panel satisfied the some evidence

test, but failed to determine whether any evidence suggested that his parole

posed "an unreasonable risk of danger to public safety," the sole parole

determinant of the statute that provides his protected liberty interest in parole,

defined in the Board's regulations.  Pen.C. § 3041; 15 CCR §§ 2401, 2402(a).

Had the court addressed the issue and applied the some evidence standard to

the state's statutory parole requirement, it could not have found *any* evidence

supporting the decision.

       The superior court failed to address any of Mr. Jackson's other

constitutional claims including the flagrant due process violations constituted

by the interminable preclusion of his parole based solely on the immutable

offense and prior record and the failure to articulate any nexus between the

offense factors recited and Mr. Jackson's current parole risk to public safety,

the State's parole determinant. The omissions were crucial considering that he has been forensically evaluated to pose a ***negligible*** public safety risk and had by the time of the 2005 hearing served nearly the *maximum* term prescribed by the regulations for his commitment offense.

Petitioner's habeas petition was then denied by the California Court of Appeal on June 28, 2007 (exhibit J), and his petition for review was denied by the California Supreme Court on September 12, 2007 (exhibit K); neither court addressed the claims, cited authority, or imposed a procedural bar.

Because the controlling state court decision failed to address Mr. Jackson's claims, it cannot be deemed a reasonable interpretation or application of the facts or law, and it is thus entitled to no federal habeas deference under the AEDPA.

Where as here the state courts did not address the constitutional claims raised, a federal habeas court will conduct a *de novo* review of the sufficiency of the evidence. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) ["where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue . . . the only method by which we can determine whether a silent state court decision is objectively unreasonable"].

5. ***Some of the immutable facts of the commitment offense and Petitioner's prior record were the only arguably viable findings supporting the panel's unreasonable parole risk decision***.

The only findings recited by the panel in support of its "unreasonable risk" conclusion were the facts of the offense and Petitioner's prior criminal record. Importantly, contrary to the notion claimed in the Answer (p. 11), the BPH panel did ***not*** base its unsuitability decision on Mr. Jackson's prison

record (the panel *commended* him for remaining disciplinary-free; see exhibit A, p. 85), and did <u>not</u> base its decision on an alleged lack of insight (see exhibit A, pp. 83-85).  (The panel made somewhat different findings to support its separate set-off decision, and its recommendations for the future).

The panel unambiguously based its decision ***solely*** on the facts of the offense and Petitioner's prior criminal record.  Exhibit A, pp. 83-85.

**6. *The evidence does not support most of the panel's findings regarding Mr. Jackson's commitment offense and prior record as they relate to his public safety risk*.**

At pages 11-12 of the Petition, Petitioner explained that the panel's "unreasonable risk of danger" conclusion was inapposite to the determination of the Board's forensic experts who, considering the same offense and prior record, but also based on Mr. Jackson's exemplary record of conduct and reform since that time, determined that the risk to public safety currently posed by his parole was "***no more than that of the average citizen in the community***."  See exhibit C, p. 6, and Petition, pp. 4-5.  The panelists, professing no qualification by training or education to predict recidivism, offered *no evidence*, just an unsupported conclusory statement that Mr. Jackson's parole would "pose an unreasonable risk of danger."  They considered exactly the same record – including Mr. Jackson's offense and prior record - considered by the Board's forensic experts, who determined that Mr. Jackson would pose a ***negligible*** risk of danger if paroled.  See *In re Smith,* 114 Cal.App.4th 343, 369 (2003) [absent actual evidence negating Governor's assessment of subject's current parole risk, "the Governor's view [of] Smith's propensity for violence . . . is unsubstantiated speculation and as such appears

to be arbitrary and capricious"];  *In re Roderick,* 154 Cal.App.4[th] 242, 272, fn. 27 (2007).

Further, as we have explained (Petition, p. 13 et seq.), the offense factors dutifully recited by the panel were inapplicable or arbitrary because they are inherent in all first-degree murders or did not apply to *Mr. Jackson's* criminal conduct. "Dispassionate" and "calculated" defines most first-degree murders, Mr. Jackson did not plan to harm or kill anyone, and no evidence suggested that *Mr. Jackson* "disregard[ed] human suffering.  To the contrary, the witnesses and trial court acknowledged that *Mr. Jackson* advised Gray, his codefendant, that *there was to be "no shooting,"* and that only Gray harbored an intent to kill and fired the shots.  See exhibit F, p. 4; exhibit G, p. 4; exhibit H, p. 2.  *In re Rodriguez,* 14 Cal.3d 639, 653 (1975);  *In re Minnis* 7 Cal.3d 639, 644 (1972) [parole determination is based on the offender's *individual culpability* as well as on the offense itself; "to make the punishment fit the criminal rather than the crime," i.e., the subject's individual culpability for the offense].

Mr. Jackson, who has always conceded the fact of his lengthy criminal record prior to the commitment offense, can do absolutely nothing to change that.  Importantly, the Board's forensic experts fully detailed and considered the 24-to-30-year old facts of Mr. Jackson's prior record in their reports concluding that his parole poses no further public safety risk.  Please see *In re Roderick, supra*, 154 Cal.App.4[th] at 275-277; *In re Scott*, 133 Cal.App. 4th 573, 601-602; *In re De Luna*, 126 Cal.App.4[th] 585, 594 (2005); *In re Smith*, 109 Cal.App.4[th] 489, 504 (2003) [after extended period of reform, old criminal record does not predict future violence].

The Answer is unavailing; the Board merely re-recites its findings without addressing any claims, facts, and authorities raised or applying the

some evidence test to determine their effect, if any, on the crucial determinant of Mr. Jackson's forensically-assessed negligible risk to public safety.

7. ***The Panel's Decision Violated Due Process Because it Set Forth no Evidence Demonstrating that Mr. Jackson's Parole Currently Posed an Unreasonable Risk of Danger to Public Safety, the State's Sole Parole Determinant and the Codified Standard below which Parole is Required, nor any evidence suggesting that the Immutable 24-to-30 Year-old Immutable Facts Recited Still Rendered Mr. Jackson a Current Unreasonable Public Safety Threat;  No Such Evidence Exists.***

The parole determination statute requires that parole "shall normally" be granted (Pen.C § 3041(a)), *unless* "the gravity of the current convicted offense or offenses, or the timing and gravity of the current or past convicted offense or offenses, is such that a consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Subd. (b). The statute and Mr. Jackson's protected liberty interest in its benefits require more than what the panel did – recite immutable pre-commitment facts to *presume* a current parole risk to public safety. Even the narrow some evidence test requires more than a presumption – it requires *evidence* of a *nexus* between those facts and the State's sole parole suitability determinant, the alleged risk to public safety currently posed by Mr. Jackson's parole.

A nexus may be established, e.g., if an offense was caused by or related to alcohol, drugs, gangs, or other factors that the inmate's prison record or evaluations indicate may still be a public safety concern.  The panel merely recited its "cruel," "callous," "dispassionate " verbiage possible applicable to Petitioner's conduct nearly 14 years ago to *imply* that public safety therefore

requires his continued imprisonment (forever – the offense facts can never change).

Reciting 14-year old facts  – *without* suggesting how those facts render Mr. Jackson a *current* unreasonable parole risk  – does not constitute *any* evidence of parole unsuitability, particularly after the Board's forensic experts had determined that Mr. Jackson's parole posed a negligible risk to public safety, well below the State's standard of "unreasonable risk" below which a parole date "shall" be set.  Pen.C. 3041; 15 CCR 2401, 2402(a).

The California Supreme Court has long held that a prospective parolee's potential *risk to public safety* is by far the overriding, if not the *only* statutory determinant in deciding whether to grant parole to a qualified inmate like Mr. Jackson.  In *In re Duarte,* 143 Cal.App.3d 943 (1983), the Court explained that under section 3041, "the Legislature left a 'consideration of the public safety' as the *fundamental criterion in assessing suitability*." *Id.* at 948 (emphasis added).  The California Supreme Court's latest decision in *Dannenberg*, relied on by the Board, is unequivocal on this issue:

> Applying these principles, we first note the obvious. The words of <u>section 3041</u> strongly suggest that the *public-safety* provision of subdivision (b) takes precedence . . . the suitability determination should focus upon the *public safety risk* posed by "this individual" . . .  overriding statutory concern [is]  for *public safety in the individual case* . . . determination of suitability for parole involves a paramount assessment of the *public safety risk* posed by the particular offender . . .

> *Dannenberg*, 34 Cal.4th at 1082-1084 (emphasis added).

A plethora of state and federal court decisions issued within the past two years emphatically holds that a recitation of commitment offense and other immutable facts is an insufficient basis to deny parole and flunks the some

1  evidence test absent the panel's citation of evidence demonstrating that the

2  facts recited continue to render the subject a current unreasonable risk of

3  danger to public safety, particularly after the subject has, as here, served in

4  excess of the minimum term required for parole release and has been

5  determined by the Board's forensic experts not to pose a further unreasonable

6  public safety risk if paroled.

7      The some evidence test is not satisfied by the mere finding of evidence

8  in the record to substantiate immutable offense facts recited by a BPH panel.

9  "***Some evidence of the existence of a particular factor does not necessarily***

10 ***equate to some evidence the parolee's release unreasonably endangers public***

11 ***safety . . . The relevant test is not whether some evidence supports the***

12 ***reasons cited for denying parole, "but whether some evidence indicates a***

13 ***parolee's release unreasonably endangers public safety***." See *Hayward v.*

14 *Marshall, supra,* 512 F.3d at 543; *In re Dannenberg, supra,* 34 Cal.4th at 1084;

15 *In re Lee, supra*, 143 Cal.App.4th at 1408-1409; *In re Singler, supra*, __

16 Cal.App.4th __, 2008 WL 788471 at *9; *In re Burdan, supra*, __ Cal.App.4th

17 __, 2008 WL 757033 at *8-9, 11.

18     See also *Willis v. Kane*, 485 F.Supp.2d 126, 1135 (N.D. Cal. 2007)

19 ["Notwithstanding the terrible nature of the crime, the critical question the

20 BPH was supposed to decide at the parole suitability hearing was whether

21 'consideration of the public safety requires a more lengthy period of

22 incarceration for this individual' *See* Cal. Penal Code § 3041(b) . . . Willis'

23 1983 crime did not provide sufficient evidence to find him unsuitable for

24 parole in 2003"]; *Martin v. Marshall*, 431 F.Supp.2d 1038, 1049 (N.D. Cal.

25 2006); *Nikooseresht v. Curry*, 2007 WL 2088558 (N.D. Cal. 2007) at *6

26 ["petitioner's commitment offense cannot by itself constitute some evidence of

27 unsuitability for parole because it fails to establish a basis for determining that

28

petitioner continues to pose an unreasonable risk of danger to society]; *Fowler v. Butler*, 2007 WL 1555726 (E.D. Cal. 2007) at *9 (adopted as judgment June 13, 2007) ["the record . . . does not, however, show any facts which suggest that the circumstances of the crime were sufficiently callous, or the motive for petitioner's actions sufficiently trivial, that sixteen years after the offense the circumstances of the crime would still suggest that petitioner remained a danger to society. Absent such facts, the Board's reliance on petitioner's criminal conviction to support the denial of parole violates petitioner's right to due process"]; *Brown v. Kane*, 2007 WL 1288448 (N.D. Cal. 2007) at *7 ["Petitioner's commitment offense would be a sufficient basis to deny his parole if it indicated a risk of re-offending and of a danger to society. It does not . . . Not only did the Governor and state courts fail to point to any such indicators, but Brown's ultimately positive prison record over the past two and a half decades indicates, as the BPT concluded, that he is suitable for parole"]; *Blankenship v. Kane*, 2007 WL 1113798 at *10 (N.D. Cal. 2007) [". . . the California regulations require . . . some evidence that the prisoner poses a present danger to society . . . continued reliance over time on an unchanging factor . . . the commitment offense . . . does not provide evidence of a present danger to society"]; *Thomas v. Brown*, 2006 WL 3783555 at *6 (N.D. Cal. 2006) [not some evidence that the murder shows current parole unsuitability]; *Rosenkrantz v. Marshall*, 444 F.Supp. 2d 1063, 1086 (C.D. Cal. 2006) ["the facts surrounding Petitioner's crime no longer amount to 'some evidence' supporting the conclusion that Petitioner would pose an unreasonable risk of danger if released on parole"].  See also State decisions: *In re Scott,* 133 Cal. App. 4th 573, 595 (2005) ["the commitment offense can negate suitability only if circumstances of the crime . . . rationally indicate that the offender will present an unreasonable public safety risk if released from prison"]; *In re*

*Elkins,* 144 Cal.App.4[th] 475, 496, 499 (2006) ["Thus, a governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society'"].

As these recent state and federal decisions hold, due process and the State's parole scheme (Pen.Code § 3041; 15 CCR §§ 2401, 2402(a)) clearly require the articulation of a nexus between the offense facts recited and a prospective parolee's current parole risk, the State's overarching parole determinant. Because none was set forth by the panel or *exists*, denial of parole based on a recitation of offense factors was arbitrary and violated due process.

Put another way, in order to apply the some evidence standard, a reviewing court must first ask the pivotal question, "Some evidence of WHAT"? The question can be answered only by the State's parole determination statute: The offense facts must demonstrate that the "timing" or "gravity" of the commitment offense or past offenses renders the inmate's parole a *current* public safety risk (every prospective parolee was dangerous when he or she committed the offense). Pen.Code. § 3041(b).

*What* did the BPH panel say about the "timing" of petitioner's offense or past offenses that makes him a current parole risk to public safety? ***Nothing***.

*What* did the panel say about how or why the "gravity" of the offense or past offenses ***makes Mr. Jackson a current public safety risk***? ***Nothing***. The panel offered sheer speculation, but no hint at how the facts it recited ***still serve to make Alex Jackson an unreasonable public safety risk if paroled***. The omission is crucial because the State's forensic experts had determined that risk to be ***negligible*** ("*no more than the average citizen in the community*"), far below the State's "unreasonable risk" parole suitability determinant. Pen.C. § 3041(a); 15 CCR §§ 2401, 2402(a).

Failing to set forth any evidence suggesting that Mr. Jackson still poses an unreasonable risk of danger to public safety, the panel's decision flunks the some evidence test, denied due process, and must be vacated.

Petitioner set forth this claim in detail in the Petition (pp. 25-33), but the Board has omitted it from the Answer.  *Bland v. California Department of Corrections*, 20 F.3d 1469, 1474 (9th Cir. 1994) [*Bland*]; *Dubria v. Smith*, 197 F.3d 390, 399 (9th Cir. 1999) [*Dubria*] [Answer's failure to address claim raised in Petition stipulates to the facts and claims raised].

## 8. The Interminable Denial of Mr. Jackson's Parole Based on Arguably Applicable, Immutable Factors of His Commitment Offense and Prior Record Violates Due Process by Amending His Prison Term to Life Without Any Possibility of Parole.

Because Mr. Jackson can improve neither the immutable facts of his pre-commitment conduct nor the negligible parole risk he has achieved, the preclusion of his parole on this basis is necessarily <u>interminable</u>, and has converted his prison term to life without any possibility of parole.  It is undisputed that Mr. Jackson's prison term already exceeds the maximum term prescribed by the regulations for the facts of his first-degree murder offense. See Petition p. 5.

In sum, the Board is denying and will continue to deny Mr. Jackson's parole for the very *reason* it is required to set his parole date:  he has served the minimum and maximum prison terms prescribed by the regulations for the facts of his first-degree murder and his parole poses no further risk of danger to public safety.

Mr. Jackson raised this claim and supported it with abundant federal and state authorities (Petition, pp. 33-38), but the Board has omitted the claim from its Answer.   See *Bland, Dubria,* above.

## CONCLUSION

In 1981 Alex Jackson participated in a robbery in which the codefendant unexpectedly shot and killed the victim and wounded two others.  It is undisputed (the witnesses and trial court acknowledged) that Mr. Jackson was not the shooter, did not harbor the intent to kill, and told the shooter that there was to be "no shooting."  Mr. Jackson does not dispute his lengthy prior criminal history (albeit all but one prior offense was non-violent) or his role in the offense, but disputes the 2005 panel's findings that his conduct was "dispassionate," calculated," or "disregarded human suffering," factors recited by the panel that fail the some evidence test.

The 2005 panel denied Mr. Jackson parole based solely on immutable pre-commitment facts without suggesting any bearing such facts still have upon his current, forensically determined negligible parole risk to public safety, the State's sole statutory parole determinant.  Because no evidence set forth by the panel demonstrates that he currently poses "an unreasonable risk of danger" to public safety, the standard set forth by the statute and regulations that provide his protected liberty interest in parole, the panel's decision flunks the some evidence test and must be vacated.  Further, the interminable nature of precluding his parole on this basis after he has served the maximum prison term prescribed by the regulations for the facts of his first-degree murder offense, converting his prison term to life without parole, denies due process.

Like the state courts, the Answer is unavailing because it completely ignores these claims, again re-reciting the panel's findings, with nary a

mention of the State's parole determinant, Mr. Jackson's public safety risk. Respondent has not offered a trace of evidence to overcome the determination of the Board's forensic expert, that Mr. Jackson's parole poses a risk to public safety "*less than the average citizen in the community*."  Accordingly, the decision flunks the some evidence test and must be vacated.

## REMEDY

Because no evidence demonstrates that Mr. Jackson's parole currently poses an unreasonable parole risk of danger to public safety, the result of any further determinations of his parole suitability is foreclosed.   Because Mr. Jackson has indisputably served in excess of the prison term prescribed by the regulations for the facts of his offense, Respondent should be directed to release Mr. Jackson from prison forthwith to serve his prescribed parole term.

Dated:   _4-14-08_

Respectfully submitted,

Michael Gunning
Counsel for Petitioner
Alex Jackson

## DECLARATION OF SERVICE BY MAIL

Case:  **Jackson v. Curry, No. 08-0923**

I declare that I am a citizen of the United States.  I am over the age of 18 and am not a party to the within title cause.

On ~~April 14, 2008~~ , I served the attached

### Petitioner's Traverse

on the parties listed below by enclosing same in an envelope to which adequate postage was affixed, and depositing same at the United States Post Office in Walnut, California for mailing.

> Attorney General
> 455 Golden Gate Avenue
> San Francisco, California 94102

I declare, under penalty of perjury, that the facts I have stated above are true and correct.

Dated ~~April 18, 2008~~ , at Walnut, California

Declarant

JACKSON v. CURRY; Petition for Writ of Habeas Corpus