IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALEX JACKSON,

    Petitioner,

  v.

RANDY GROUNDS, Warden,

    Respondent.
_____/

No. C-08-0923 MMC

**ORDER DENYING RESPONDENT'S MOTION TO DISMISS; DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    Before the Court is petitioner Alex Jackson's Petition for a Writ of Habeas Corpus, filed February 13, 2008; respondent Randy Grounds[1] has filed an answer thereto, along with a memorandum of points and authorities in support of his answer, and petitioner has filed a traverse. Also before the Court is respondent's motion to dismiss, filed November 9, 2009; petitioner has filed opposition thereto, and respondent has filed a reply.

    While the petition and the motion to dismiss were under submission, the Ninth Circuit issued its decision in Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010), which addressed important issues relating to federal habeas review of decisions denying parole to California state prisoners. The Court then directed the parties to file supplemental

---

[1] Randy Grounds, the current warden of the Correctional Training Facility, is substituted for former warden Ben Curry as respondent. See Rule 2(a) of Rules Governing Section 2254 Cases in the United States District Courts (providing where petitioner is "in custody under a state-court judgment, the petition must name as respondent the state officer who has custody").

briefing explaining their views as to the effect, if any, of the Hayward decision on the instant petitioner's petition. Both parties subsequently filed supplemental briefs.

Having read and considered each of the parties' respective submissions, the Court rules as follows.

## BACKGROUND

In 1983, in the Superior Court for the County of Los Angeles ("Superior Court"), petitioner was convicted of first degree murder, kidnap and robbery; additionally, the trial court found true the allegation that petitioner personally used a firearm at the time of the commission of said offenses. (See Pet. Ex. B; Answer 2:4-7.) Petitioner was sentenced to a term of twenty-five years to life on the murder conviction, plus two years for the personal use finding, for a total of twenty-seven years to life. (See Pet. Ex. B.)[2]

The facts of the commitment offenses, as set forth in a order issued by the Superior Court in 2007, are as follows:

> The record reflects that on November 24, 1981, petitioner and his crime partners entered the home of a known drug dealer, with whom he had done business in the past, in order to steal money and cocaine. Whey they arrived several people were present in the home. Petitioner and one co-defendant forced their five victims to lie on the floor at gunpoint while they demanded money and drugs and money. Petitioner's co-defendant then shot at all five, killing one and injuring three.

(See Pet. Ex. I.)

On December 14, 2005, the Board of Parole Hearings ("Board") conducted a hearing to determine whether petitioner was suitable for parole; petitioner appeared at the hearing and was represented by counsel. At the conclusion of the proceedings, the Board found petitioner was "not suitable for parole" because he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (See Pet. Ex. A, at 83.)[3]

---

[2] Petitioner was sentenced to a seven-year term on the robbery conviction, and a seven-year term on the kidnaping conviction, such sentences to run concurrently with each other and with petitioner's life sentence for the murder conviction.

[3] According to petitioner, the Board previously had found petitioner not suitable for parole in 1997 and in 2002.

Thereafter, petitioner filed a petition for a writ of habeas corpus in the Superior Court, which petition was denied by order filed April 13, 2007; in particular, the Superior Court concluded that "the record contains 'some evidence' to support the Board's finding that petitioner is unsuitable for parole." (See Pet. Ex. I.)[4] Petitioner next filed a petition for a writ of habeas corpus in the California Court of Appeal, which petition was denied by order filed June 28, 2007, for the stated reason that "[t]here is some evidence to support the decision of the Board." (See Pet. Ex. J.) On September 12, 2007, the California Supreme Court, without comment, denied petitioner's petition for review of the Court of Appeal's order. (See Pet. Ex. K.)

On February 13, 2008, petitioner filed the instant federal action, alleging the state court's decisions have deprived him of a liberty interest without due process.

**DISCUSSION**

**A. Motion to Dismiss**

On January 7, 2009, subsequent to the filing of the instant petition, the Board found petitioner suitable for parole. (See Resp't's Mot. to Dismiss Ex. 1.) Based on such development, respondent argues the instant petition challenging the Board's 2005 decision to the contrary is moot. Respondent relies on Church of Scientology v. United States, 506 U.S. 9 (1992), in which the Supreme Court held that "if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [case] must be dismissed." See id. at 12.

As respondent acknowledges, the Board's 2009 decision was itself reversed by the Governor, who invoked his authority under state law to review the Board's decision. (See Resp't's Mot. to Dismiss Ex. 2.) Consequently, it is undisputed that petitioner remains in custody and remains subject to a decision that he is not suitable for parole. Respondent nonetheless contends that because the instant petition challenges a decision of the Board, not the Governor, and because the Board found in 2009 that petitioner is suitable for

---

[4]The California "some evidence" requirement is discussed below.

3

parole, there is no remedy this Court can provide to petitioner in the event he prevails in the instant action. The Court disagrees.

At the outset, the Court notes that the instant petition challenges the decision of the state courts, not that of the Board directly. As was recently explained by the Ninth Circuit, a district court considering a petition for a writ of habeas corpus arising from the denial of parole must "decide whether the California judicial decision approving the . . . decision rejecting parole was an unreasonable application of the California 'some evidence' requirement, or was based on an unreasonable determination of the facts in light of the evidence." See Hayward, 603 F.3d at 562-63 (internal quotation and citation omitted).

In any event, were petitioner to demonstrate that the state courts erred in finding the Board's 2005 decision was supported by "some evidence," the proper remedy would be to remand the matter with instructions that petitioner be afforded a "new parole-suitability determination that will proceed in keeping with the state's due process requirements." See Haggard v. Curry, – F.3d –, 2010 WL 4978842, *5-6 (9th Cir. 2010). Respondent's argument that such a remedy could not result in any benefit to petitioner is unpersuasive. Although not clearly expressed, respondent's theory appears to be that, on remand, the Board would find petitioner suitable for parole and the Governor would then reverse said decision, leaving petitioner in the same position as at present. Any such theory, however, is based wholly on speculation.

Moreover, if petitioner were to prevail and, accordingly, be afforded a "new parole-suitability determination," see id., the Board would be entitled to consider any new evidence that may exist. See In re Prather, 50 Cal. 4th 238, 258 (2010) (holding "judicial order granting habeas corpus relief implicitly precludes the Board from again denying parole – unless some additional evidence (considered alone or in conjunction with other evidence in the record, and not already considered and rejected by the reviewing court) supports a determination that the prisoner remains currently dangerous"). Here, it would appear, evidence in addition to that considered by the Board in 2005 is or could be available for consideration by the Board on remand. For example, the record of the 2009

4

proceedings includes a "mental health evaluation" prepared in 2008, which evaluation appears to include findings that differ from the 2001 evaluation considered by the Board in its 2005 decision; in particular, the 2008 evaluation includes a finding that petitioner posed a "moderate" risk for future violence and for recidivism (see Resp't's Mot. to Dismiss Ex. 2, at 4), while the 2001 evaluation found Jackson's "violence potential . . . to be no more than that of the average citizen in the community" (see Pet. Ex. C). Additionally, the record of the 2009 proceedings includes, in the Governor's words, a "confidential file contain[ing] documentation that indicates Jackson was involved in running a drug and extortion ring, as well as other criminal activity within the prison, through at least 2000" (see Resp't's Mot. to Dismiss Ex. 2 at 2); the record before this Court, i.e., the record before the Board in 2005, contains no reference to such documentation.

Under the circumstances, and particularly given the fact that petitioner remains in custody without a parole date, respondent has not shown it would be "impossible for the court to grant any effectual relief whatever" to petitioner. See Church of Scientology, 506 U.S. at 12.

Accordingly, the motion to dismiss will be denied.

**B. Merits**

**1. Standard of Review**

A federal district court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," see 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see 28 U.S.C. § 2254(d).

For purposes of § 2254(d), in determining whether the state court's rejection of a federal claim is unreasonable, the district court considers the "last reasoned decision" issued by a state court, see Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991), which, in this instance, is the June 28, 2007 order of the Court of Appeal.[5]

**2.  Federal Due Process in Parole Suitability Hearings**

The Due Process Clause of the United States Constitution does not itself provide state prisoners with a federal right to release on parole.  See Hayward, 603 F.3d at 562. The substantive law of a state, however, can create a federally enforceable right to release on parole, see id. at 555, 559, and California's parole scheme gives rise to a cognizable liberty interest in release on parole, which liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness, see Pirtle v. California Board of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010).

In Hayward, the Ninth Circuit explained the law in California as it relates to parole suitability determinations:

> The California parole statute provides that the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual."  The crucial determinant of whether the prisoner gets parole in California is "consideration of the public safety."

//

---

[5] In his petition, as well as his traverse, petitioner asserts that the Court of Appeal failed to address his claims and failed to cite any authority for its decision.  Petitioner is incorrect.  The Court of Appeal expressly addressed petitioner's claims when it found there existed "some evidence to support the decision of the Board" (see Pet. Ex. J), and it cited In re Rosenkrantz, 29 Cal. 4th 616, 667 (2002), in which case the California Supreme Court directed state courts reviewing decisions denying parole to determine "whether the factual basis of such a decision is supported by some evidence in the record that was before the Board."  See Rosenkrantz, 29 Cal. 4th at 667.  Although the Court of Appeal's order does not identify the specific evidence on which the Court of Appeal relied, such omission does not render the opinion unreasoned for purposes of § 2254(d).  See, e.g., Cooke v. Solis, 606 F.3d 1206, 1212-13 (9th Cir. 2010) (holding state court order holding "some evidence" existed to support Board's denial, but which order did not identify such evidence other than as "including but certainly not limited to the life offense," was "reasoned state court decision" properly reviewable under § 2254(d)).

> In California, when a prisoner receives an indeterminate sentence of fifteen years to life, the "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term." Under the California parole scheme, the prisoner has a right to a parole hearing and various procedural guarantees and rights before, at, and after the hearing; a right to subsequent hearings at set intervals if the Board of Prison Terms turns him down for parole; and a right to a written explanation if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole. Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

Hayward, 603 F.3d at 561-62 (internal footnotes and citations omitted).

The Ninth Circuit further explained:

> Subsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, In re Lawrence and In re Shaputis, that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Id. at 562 (internal footnotes and citations omitted; alteration in original).

After providing the above background for California law as it applies to parole suitability determinations, the Hayward court explained the role of a federal district court charged with reviewing the decision denying a prisoner parole. Specifically, the district court must decide, under 28 U.S.C. § 2254(d), "whether the California judicial decision approving the [Board's] decision rejecting parole was an unreasonable application of California's 'some evidence' requirement, or was based on an unreasonable determination of the facts in light of the evidence." See id. at 562-63; see also Cooke, 606 F.3d at 1213 (finding unpersuasive respondent's argument that "constraints imposed by [Antiterrorism and Effective Death Penalty Act of 1996] preclude federal habeas relief on [due process

7

challenge to state court's application of "some evidence" requirement]").

**3. California Law Regarding Parole Suitability Determinations**

When assessing whether the state court's decision, finding the Board's determination was supported by some evidence, was or was not unreasonable, the district court's analysis is framed by California's regulatory, statutory and constitutional provisions that govern parole decisions. See Pirtle, 611 F.3d at 1020.

Under California law, a prisoner serving an indeterminate life sentence, such as petitioner herein, becomes eligible for parole after serving a minimum term of confinement required by statute. See In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). Regardless of the length of time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." See Cal. Code Regs. tit. 15 ("CCR"), § 2402(a). In making such determination, the Board must consider various factors: the prisoner's social history; his past and present mental state; his past criminal history; the base and other commitment offenses, including the prisoner's behavior before, during and after the crimes; the prisoner's past and present attitude toward the crime; and any other information that bears on the prisoner's suitability for release. See CCR § 2402(b)–(d).[6]

According to the California Supreme Court, "the core statutory determination entrusted to the Board and the Governor is whether the inmate poses a current threat to public safety." See In re Lawrence, 44 Cal. 4th 1181, 1191 (2008). "[T]he core determination of 'public safety' under the statute and corresponding regulations involves an

---

[6]The listed circumstances tending to show unsuitability for parole are the following: the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner"; a previous record of violence; an unstable social history; the prisoner previously engaged in a sadistic sexual offense; a lengthy history of severe mental problems related to the offense; and negative institutional behavior. See CCR § 2402(c). The listed circumstances tending to show suitability for parole are the following: the absence of a juvenile record; a stable social history; signs of remorse; a stressful motivation for the crime; whether the prisoner suffered from battered woman's syndrome; the lack of a criminal history; the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic plans for release or developed marketable skills; and positive institutional behavior. See CCR § 2402(d).

assessment of an inmate's current dangerousness." Id. at 1205 (emphasis in original).

Importantly, as explained by the California Supreme Court:

> [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." These factors are designed to guide an assessment of the inmate's threat to society, if released, and hence could not logically relate to anything but the threat currently posed by the inmate.

See Lawrence, 44 Cal. 4th at 1205-06 (internal citations omitted). Thus, as set forth by the California Supreme Court:

> [T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Shaputis, 44 Cal. 4th 1241, 1254-55 (2008).

**4. Petitioner's Claims**

Petitioner alleges the state courts' decision finding "some evidence" exists to support the Board's 2005 decision was clearly erroneous, and thus the state courts deprived him of due process. Specifically, petitioner asserts, the state courts erred because there was no evidence to support the Board's decision that his release on parole would constitute a threat to public safety. According to petitioner, the only evidence cited by the Board to support its decision were the facts of his commitment offense and his criminal history prior to the murder. Having so characterized the record, petitioner then argues the Board cannot rely on "immutable" facts because such facts are "irrelevant to [petitioner's] current parole risk." (See Pet. 10.)

The Court initially notes that, as a legal matter, "immutable" facts can, under some circumstances, constitute "some evidence" to support a finding of unsuitability for parole. For example, in Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006),

//
//

overruled on other grounds, Hayward, 603 F.3d at 555,[7] the Ninth Circuit found "the gravity of [the petitioner's] convicted offenses," which involved a homicide resulting from a hit-and-run automobile accident while petitioner was under the influence of alcohol, "in combination with [the petitioner's] prior offenses," which were "seven DUIs," constituted "some evidence" to support the Board's finding that the petitioner therein was not suitable for parole. See Sass, 461 F. 3d at 1129, 1130 n.1. In any event, as discussed below, the record here does not indicate the Board relied solely on "immutable" facts.

The Court next turns to the central issue presented by the instant petition, which is whether the California Court of Appeal was clearly unreasonable when it found "some evidence" supported the Board's 2005 decision to deny parole. For the reasons discussed below, the Court finds the Court of Appeal's rejection of petitioner's challenge to the Board's determination was neither an unreasonable application of the "some evidence" standard nor an unreasonable determination of the facts in light of the evidence in the record before the Board.

**a. The Commitment Offense**

The commitment offenses are first degree murder, kidnap and robbery. During the course of such offenses, petitioner, who was 24 at the time, was armed with a .32 caliber handgun and used it during the commission of the offenses. The Board found the offenses were "especially cruel and callous" in that four persons were shot, one fatally, by petitioner's co-defendant after the victims had already complied with petitioner's demand to give him their "dope and money," and further found the motive for the murder was "very trivial" in that the motive was to accomplish the theft of money and narcotics, which petitioner and his co-defendant split after the murder. (See Pet. Ex. A, at 12, 14, 83-84.)[8]

//

---

[7] Hayward overruled Sass to the extent Sass "might be read to imply that there is a federal constitutional right [to parole] regardless of whether state law entitles the prisoner to release." See id.

[8] After he murdered the victim, petitioner's co-defendant told petitioner that "the guy could see his face." (See Pet. Ex. D, at 2.)

**b. Prior Criminal Record**

As a juvenile, petitioner, while residing in Ohio, was fined, placed on probation, and/or placed on house arrest for acts of burglary and larceny he committed when he was thirteen and fourteen years old. (See Pet. Ex. A at 16, Ex. D at 3.) At the age of fourteen, after he attempted to steal money from a jewelry store, he was placed by the county welfare department in a "school for boys," whereafter he committed a burglary by breaking into the counselors' cottage at the school. (See id. Ex. D, at 3.) At the age of fifteen or sixteen, he moved to California, where he was detained and/or arrested multiple times for robbery and theft crimes. (See id. Ex. D, at 3, 4.) When he was seventeen years old, he was declared a ward of the court after the court sustained a petition alleging he had grabbed a thirteen-year-old female by the throat, forced her to the couch, removed her clothes, and forced her to have intercourse with him. (See id. Ex. D, at 4.) While on probation for that offense, petitioner and his two brothers were stopped by the police while in a stolen vehicle, and, as a result, petitioner continued on probation. (See id.).

As an adult, at the age of eighteen, petitioner, in 1975, stole a vehicle and was subsequently convicted of grand theft auto and sentenced to five years probation and 365 days in the county jail. (See id.) In December 1975, petitioner engaged in a "felony escape," which "resulted in 36 months probation and 90 [days] summary probation and 90 days in jail." (See Ex. A, at 19-20, Ex. D, at 4.) In March 1977, when petitioner was twenty years old, he was arrested for robbery, which charge petitioner explained to correctional officers who interviewed him for purposes of the 2005 parole hearing was for "stealing a car at gun point," but the case was dismissed when, petitioner reported, the "witness" did not appear in court. (See Ex. A, at 20, Ex. D, at 4.) In October 1977, petitioner committed a robbery during which crime he personally used a handgun, and he was sentenced to two years in state prison. (See Ex. A, at 20, Ex. D, at 4-5.) Ten months after he was released from prison on the robbery conviction, petitioner engaged in the crimes for which he is presently incarcerated. (See Ex. D, at 5.)

The Board found that by the time petitioner engaged in the commitment offenses, he

1  had "incurred a very, very lengthy, lengthy criminal history dating back to the age of 13"
2  (see id. Ex. A, at 84) and a "record of violence and assaultive behavior and an escalating
3  pattern of criminal conduct" (see id. Ex. A, at 85), and had "failed to profit from society's
4  previous attempts to correct [his] criminality," specifically, "juvenile probation, adult
5  probation, parole, county jail, as well as the prior prison term for robbery" (see id.).

### c. Disciplinary History During Incarceration

While incarcerated on the commitment offenses, petitioner has received "four CDC-115s and three CDC-128 disciplinaries," the latest of which, a "CDC-115, received in 2000, was for utilizing another's privilege card," and which the Board characterized as a "serious 115." (See Pet. Ex. A, at 91, Ex. C, at 5.)  Although the Board noted that petitioner had not incurred any additional "115's or 128's" as of petitioner's prior parole hearing, which occurred in 2002 (see Pet. Ex. A, at 85), the Board found not enough time had passed for it to conclude petitioner's 2000 rules violation was not a factor tending to show petitioner, in 2005, was not yet suitable for parole (see id. Ex. A, at 85-86).

### d. Lack of Insight

In explaining why he began engaging in criminal acts, petitioner, at the 2005 parole hearing, stated that, in retrospect, he believed he had a "fashion addiction, like labels," and explained that when he was young, he "didn't have very much of anything" and began engaging in crime in order to get "some nice things and to help [his] family" (see id. Ex. A, at 30), such as "clothes and shoes" (see id. Ex. A, at 68).  The Board concluded that petitioner had "attempted to imply . . . that poverty was one of the main factors as to . . . what initiated [his] criminal activities," and was of the view that petitioner should "become involved in self-help or therapy to further explore that area and [that] until progress [was] made, . . . [petitioner would] continue to be unpredictable and a threat to others."  (See id. Ex. A, at 89-90.)

### e. "Positive Aspects"

The Board noted that petitioner had not received a rules violation report since 2000 (see id. Ex. A, at 85, 90), commended petitioner for completing "parenting and anger

1 management" courses and for volunteering in a "children's holiday festival in 2000" (see id.
2 Ex. A, at 90), and found petitioner's "parole plans" were "very good," in that he had "support
3 from [his] wife, [his] sister, and others," and a job offer from his sister, as well as a "variety
4 of skills" that he could utilize to obtain employment even if he did not have a job offer (see
5 id. Ex. A, at 88-89). Further, according to the Board, a Mental Health Evaluation conducted
6 in 2001 was "favorable of release" (see id.), in that the staff psychologist who authored the
7 evaluation was of the opinion that "[i[f released to the community, [petitioner's] violence
8 potential is considered to be no more than that of the average citizen in the community."
9 (See id.; see also Ex. C, at 6.)[9] The Board concluded, however, that such "positive aspects
10 of [petitioner's] behavior [did] not outweigh the factors of unsuitability." (See id. Ex. A, at
11 90.)

### f. Analysis of the Court of Appeal's Determination

As noted, the Court of Appeal found "some evidence" existed to support the Board's finding that petitioner, in 2005, was not suitable for parole.

Under state law, the "some evidence" standard is "extremely deferential and reasonably cannot be compared to the standard of review involved in undertaking an independent assessment of the merits or in considering whether substantial evidence supports the findings underlying [the Board's] decision." See Rosenkrantz, 29 Cal. 4th at 665. Based on the above record of the evidence presented and considered at petitioner's 2005 parole suitability hearing, this Court cannot say the Court of Appeal's determination was an unreasonable application of the applicable standard, which, as noted, is "extremely deferential," or that it was based on an unreasonable determination of the facts in light of the evidence in the record before the Board. See Hayward, 603 F.3d at 563. Specifically, it was not clearly unreasonable for the Court of Appeal to defer to the Board's finding that

---

[9]As noted above, a mental health evaluation completed in 2008 more recently concluded that petitioner posed a "moderate" risk for future violence and for recidivism. (See Resp't's Mot. to Dismiss Ex. 2, at 4.) Because the 2008 evaluation was not included in the record before the Board in 2005, however, such evaluation was not before the Court of Appeal, and, consequently, is not relevant to the Court's determination of the merits of the instant federal petition.

13

petitioner posed a threat to public safety in 2005, in light of the facts of the commitment offense, the escalating nature of petitioner's pre-commitment criminal history, and the fact that each prior attempt at rehabilitation, whether in the form of juvenile probation, placement at a juvenile home, jail, adult probation, or state prison, was unsuccessful in dissuading petitioner from continuing to engage in criminal activity of an escalating nature. See id. at 562 (holding prisoner's "aggravated offense," when coupled with "something in the prisoner's pre- or post-incarceration history" from which dangerousness can be inferred, sufficient to support "some evidence" of future dangerousness). Moreover, contrary to petitioner's argument, the Board, and thus the state courts by extension, did not rely solely on the facts of the offense and petitioner's pre-commitment criminal history; the Board also relied on petitioner's post-conviction rules violations, the most recent of which was of a serious nature and suggests petitioner had not resolved to conform his conduct to the law, as well as on petitioner's need to obtain counseling to obtain better insight into the reasons for his prior criminal conduct.

Accordingly, the petition for a writ of habeas corpus will be denied.

## C. Certificate of Appealability

A certificate of appealability will be denied as to each of petitioner's claims. See 28 U.S.C. § 2253(c)(1)(a); Rules Governing Habeas Corpus Cases Under § 2254, Rule 11 (requiring district court to issue or deny certificate of appealability when entering final order adverse to petitioner). Specifically, petitioner has neither made "a substantial showing of the denial of a constitutional right," see Hayward, 603 F.3d at 554–55 (citing 28 U.S.C. § 2253(c)(2)), nor demonstrated that his claim is "debatable among reasonable jurists," see id. at 555.

//
//
//
//
//

**CONCLUSION**

For the reasons stated above:

1. Respondent's motion to dismiss is hereby DENIED, and

2. Petitioner's petition for a writ of habeas corpus is hereby DENIED.

**IT IS SO ORDERED.**

Dated: December 16, 2010

MAXINE M. CHESNEY
United States District Judge